# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* A.C.

No. 20-0441 (Barbour County 19-JA-47)

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother K.J., by counsel Jeremy B. Cooper, appeals the Circuit Court of Barbour County's February 26, 2020, order terminating her parental rights to A.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Allison C. Iapalucci, filed a response on behalf of the child also in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period and in ruling that she could not file a motion for post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2019, the DHHR filed a child abuse and neglect case against petitioner and her boyfriend. The DHHR alleged that they abused drugs in the home while caring for the child and exposed her to other drug addicts and drug dealers. Further, the home was without utilities such as water and heat during very cold weather. Lastly, the DHHR alleged that petitioner and her boyfriend failed to provide basic necessities for the child and educationally neglected her, as the child reported a lack of food in the home and had missed at least sixty-five days of school. Petitioner waived her preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

The circuit court held an initial adjudicatory hearing in August of 2019. Petitioner admitted that she continued to abuse methamphetamine and had abused the substance as recently as a few days prior to the hearing. Petitioner expressed a desire to stipulate to the allegations contained in the petition but, upon questioning, was evasive and denied claims the child made during a Child Advocacy Center ("CAC") interview. Given petitioner's dishonesty and the DHHR's stated intention of filing an amended petition, the circuit court continued the hearing without adjudicating petitioner.

Later in August of 2019, the DHHR filed an amended petition against petitioner and her boyfriend. The DHHR alleged that the two were evicted from their home earlier in August due to their failure to pay rent for several months and that they had to be removed by law enforcement officers. The DHHR also alleged that petitioner tested positive for methamphetamine, amphetamines, and ecstasy following the previous adjudicatory hearing.

The circuit court reconvened the adjudicatory hearing in October of 2019. The circuit court continued its questioning of petitioner, who continued to be evasive. Petitioner admitted that she was addicted to drugs, specifically methamphetamine, and that it impaired her ability to parent the child. Petitioner denied knowing where her methamphetamine came from, then claimed she found methamphetamine in a toolbox in her home. Petitioner also denied the disclosures of domestic violence from the child's CAC interview. Ultimately, the circuit court found that petitioner's "drug seeking behavior led to the failure of [petitioner] to provide the basic necessities of life, and exposed the child to dangerous situations, including the people and risks commiserate [sic] with being a member of the drug culture." The circuit court further found that petitioner's neglect "spilled over into the [child's] education" as she had missed sixty-six days of school and was in special education classes with an individualized education plan. The circuit court also found that petitioner "continued to use methamphetamine from the beginning throughout the entirety of this case" and that her extremely high levels on her drug screen results indicated that she was severely addicted. Accordingly, the circuit court adjudicated petitioner as an abusing and neglecting parent and held her motion for a post-adjudicatory improvement period in abeyance to allow her the opportunity to demonstrate that she would fully participate in the same.

Following the adjudicatory hearing, the guardian authored a summary, which indicated that petitioner refused "no fewer than three (3) available beds" at long-term rehabilitation programs. Thereafter, petitioner entered a short-term detoxification program which, coincidentally, was the same program her boyfriend entered as a part of his criminal proceeding.[2] Petitioner successfully completed the program and was released sometime in November of 2019. The members of the multidisciplinary team ("MDT") continued to recommend that petitioner attend a long-term program; however, petitioner "immediately took [long-term treatment] off the table as an option for her treatment." As such, the MDT recommended against granting petitioner an improvement period.

In February of 2020, the circuit court held a dispositional hearing. The DHHR presented the testimony of a service provider, who stated that she provided petitioner with adult life skills and parenting classes. The service provider testified that petitioner would meet with her to

[2]During the proceedings, petitioner was incarcerated on drug-related charges.

participate in the services but would not follow up with any recommendations. Further, petitioner only attended six to eight classes out of twenty-four with the service provider because there was constantly some sort of "crisis going on." The service provider stated that petitioner blamed issues with transportation, housing, her boyfriend's incarceration, and her dog for her inability to meet for the classes. The service provider also testified that petitioner continued to associate with her boyfriend after she was discharged from her detoxification program.

A CPS worker testified that petitioner entered and completed a short-term detoxification program. However, petitioner refused to attend a long-term program as recommended by the short-term program's psychologist and the MDT. The CPS worker also testified that petitioner was prohibited from visiting with the child since the adjudicatory hearing due to her positive drug screens. Further, petitioner had missed drug screens; failed to attend her psychological evaluation; requested counseling services but then refused to attend; and remained in a relationship with her boyfriend, who had been incarcerated as a result of his drug-related charges. The CPS worker recommended against granting petitioner an improvement period because petitioner "showed us that she's not willing to work with the [DHHR]." The CPS worker opined, "[Because] we've actively been in this case since April [of 2019] and there's been a failure to participate in this case and lack of insight, the [DHHR] has no other choice but to ask for termination."

The director of the local community corrections program testified that petitioner submitted to forty-seven tests, twenty-seven of which were positive for methamphetamine. The director testified that five of petitioner's positive tests exceeded 100,000 nanograms and one test exceeded 200,000 nanograms. The director explained that these levels were extremely high and that "[a]nything over 300 is extremely high."

A worker from Jobs and Hope West Virginia testified regarding the services provided to petitioner.[3] The worker testified that she assisted petitioner in obtaining housing and identification, such as her social security card, driver's license, and birth certificate. The worker noted that she would have assisted petitioner in obtaining a job, but the lack of identification created barriers to employment that first had to be addressed and that petitioner ceased communication with her before those barriers could be resolved.

Petitioner testified that she was "doing [her] best to get back on [her] feet" and loved the child. However, when asked whether she would enter into long-term inpatient treatment, petitioner stated through her counsel that she would prefer to participate in an intensive outpatient treatment program in order to maintain her apartment and employment.

At the close of evidence, the circuit court found that petitioner had no insight into her abusive and neglectful behavior and failed to follow through with services. The circuit court noted that petitioner made excuses and denied treatment when it was offered. Petitioner's drug screens indicated that her substance abuse issues were not a "normal addiction," and, rather, were

---

[3]According to the worker, Jobs and Hope West Virginia is a program dedicated to "helping people who are either in recovery or possibly coming out of incarceration to basically gain job skills through education primarily, help them eliminate barriers that they have to career[s] and employment, and ultimately be able to help them find a job."

longstanding, severe, and life-threatening. The circuit court found that petitioner "didn't get it" despite having been offered several opportunities to improve her circumstances and that, as of the dispositional hearing, petitioner continued to refuse long-term inpatient treatment. Accordingly, the circuit court terminated her parental rights upon finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. The circuit court also denied petitioner post-termination visitation with the child. Petitioner appeals the February 26, 2020, dispositional order terminating her parental rights to the child.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period. According to petitioner, the circuit court "gave inadequate weight" to certain evidence presented at the dispositional hearing. Petitioner points out that she completed several parenting classes and that "logistical issues" were what kept her from completing the course. Petitioner also avers that she attended a rehabilitation program, obtained housing, and "avoided incarceration." Further, petitioner produced several negative drug screens following her discharge from the rehabilitation program and indicated her desire for intensive outpatient treatment. Petitioner contends that this evidence shows she made "significant strides in her life[] and would be likely to participate in an improvement period to address the conditions of abuse and neglect."

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements[.]").

---

[4]The biological father's parental rights were terminated during prior proceedings. Petitioner's boyfriend's custodial rights were terminated during the proceedings below. The permanency plan for the child is adoption by her foster family.

4

We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004) (quoting W. Va. Code § 49-6-12(b)(2) (1996)).

Having reviewed the record, we find that the circuit court did not err in denying petitioner's request for a post-adjudicatory improvement period. The record clearly demonstrates that petitioner failed to adequately address her addiction to methamphetamine. While petitioner points out that she obtained housing, avoided incarceration, and attended a handful of parenting classes, she continuously tested positive for methamphetamine throughout the proceedings. Indeed, her levels were extremely high and life-threatening on several occasions. Further, contrary to her assertions, petitioner attended only a fourth of her parenting classes and entered a month-long detoxification program instead of entering a long-term program as recommended by the MDT. According to the guardian, petitioner refused no fewer than three available beds in long-term facilities and, as of the dispositional hearing, indicated her reluctance to attend a long-term program.[5] While petitioner produced some negative screens following her completion of the short-term program, she eventually ceased submitting to tests. Finally, petitioner evaded the circuit court's questioning, denied the extent of drug abuse in the home, and minimized the effect of the abuse and neglect on the child.[6] We have previously held that failure to acknowledge the issues of abuse and neglect renders an improvement period an "exercise in futility." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *Charity H.*, 215 W. Va. at 217, 599 S.E.2d at 640). Based on petitioner's failure to demonstrate her likelihood of fully participating in an

---

[5]In her reply brief, petitioner contends that her refusal to attend a long-term treatment program should not have been held against her as attending such a program "makes it exceedingly difficult to meet the other requirements of a case plan, or of an improvement period if one is granted, and also makes it very hard to comply with the timelines required under Chapter 49." Petitioner argues that this creates a situation where a parent's parental rights are either in jeopardy for noncompliance or for their failure to achieve all the other necessary preconditions for reunification. However, we find that petitioner is entitled to no relief in this regard. Petitioner attended a short-term program but was in need of more treatment. Indeed, the short-term program's psychologist recommended that petitioner attend long-term treatment in order to attain sobriety. Moreover, petitioner ceased submitting to drug screens following her release from the short-term program. As such, it is clear that petitioner failed to remedy her drug addiction through short-term treatment and, thus, long-term treatment was not a meaningless requirement of her case plan. To the extent petitioner claims that attending long-term treatment would have pushed her case beyond the time limits set forth in West Virginia Code § 49, we note that § 49-4-610(6) allows for an extension when the parent is substantially complying with the terms of an improvement period and the extension is in the best interest of the child.

[6]As part of her argument, petitioner also contends that it was error for the circuit court to find she was dishonest when she refused to disclose her drug dealer as it would have placed her in danger. However, petitioner's argument entirely ignores the fact that the circuit court found she was evasive and dishonest on multiple occasions regarding her drug use and the effect it had on the child. Accordingly, we find no error in the circuit court's characterization of petitioner as dishonest.

improvement period and her failure to acknowledge the issues of abuse, we find no error in the circuit court's denial of her motion for a post-adjudicatory improvement period.

The evidence as set forth above also supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d)(3) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent has "habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning."

Here, there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. As shown above, petitioner's drug use continued throughout the entirety of the proceedings. Indeed, the record establishes that petitioner submitted to forty-seven drug screens and twenty-seven of those screens were positive for methamphetamine. Six of those screens indicated extremely high, life-threatening levels of methamphetamine. Further, petitioner refused long-term treatment as recommended by the MDT despite the availability of beds in three different facilities. While petitioner claims that she had issues with transportation and housing, testimony at the dispositional hearing indicated that assistance with these things was offered to, but not taken advantage of by, petitioner. Finally, as demonstrated above, petitioner failed to grasp the gravity of the situation or acknowledge the extent of her abuse. Based on the foregoing, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. To the extent petitioner claims that the circuit court should have imposed a less-restrictive alternative to the termination of her parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). In sum, the circuit court's findings are fully supported by the record below, and we find no error in the termination of petitioner's parental rights.

Petitioner also argues that the circuit court erred in ruling that petitioner had no right to file a motion for post-termination visitation. Petitioner claims that the circuit court made an oral ruling that she was precluded from filing a motion for post-termination visitation and that only an MDT member or the child's therapist could seek post-termination visitation if it were in the child's best

interests. The circuit court made the following finding regarding post-termination visitation in its dispositional order:

> There is to be no contact of either a direct or indirect nature with [petitioner] or [petitioner's boyfriend], but if a therapist would agree to contact, it may be revisited by this [c]ourt, as contact is not in the child's best interest at this time, and the parents have no right of contact, it is the child's right of contact that would be entertained by the [c]ourt.

Petitioner avers it "was an error of law to entirely foreclose [her] from being the one to initiate such a motion [for post-termination visitation]."

The circuit court's order does not support petitioner's assertion that she is prohibited from filing a motion for post-termination visitation. This Court has previously held "it is clear that where a circuit court's written order conflicts with its oral statement, the written order controls." *Tennant v. Marion Health Care Foundation, Inc.*, 194 W. Va. 97, 107 n.5, 459 S.E.2d 374, 384 n.5 (1995). *See also State v. White*, 188 W. Va. 534, 536 n.2, 425 S.E.2d 210, 212 n.2 (1992) ("[H]aving held that a court speaks through its orders, we are left to decide this case within the parameters of the circuit court's order." (citations omitted)); *State ex rel. Erlewine v. Thompson*, 156 W. Va. 714, 718, 207 S.E.2d 105, 107 (1973) ("A court of record speaks only through its orders[.]" (citations omitted)). Accordingly, the circuit court's order controls over its oral statement, and it simply denies petitioner post-termination visitation and states that the issue may be revisited if a therapist were to recommend that visitation is in the child's best interests. Therefore, we find no merit in this argument.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 26, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison